IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BEVERLY A. SLIFER,

                Plaintiff,            OPINION AND ORDER

  v.
                                         12-cv-728-wmc

MERCK & CO., INC., MERCK &
CO. INC. LONG TERM DISABILITY
PLAN FOR UNION EMPLOYEES
(a/k/a Merck & Co. Medical, Dental and
Long-term Disability Program for Union
Employees), and METROPOLITAN LIFE
INSURANCE COMPANY,

                Defendants.

---

In this ERISA action, plaintiff Beverly Slifer moves the court for an order allowing discovery of the reasons behind defendants' decision to deny her benefits, arguing that discovery may reveal a procedural defect. (Dkt. #12.) The briefing of this motion raised an ancillary, but (as explained below) related issue regarding the appropriate standard of review that the court should apply in examining defendants' denial -- arbitrary and capricious or *de novo*. Because the plan documents at issue here grant defendant MetLife discretionary authority to make benefits determinations, the court must review defendants' decision to deny benefits under an arbitrary and capricious standard and Slifer must make the necessary showing for exceptional relief required by *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 815 (7th Cir. 2006). Having failed to do so, the court also must deny plaintiff's motion for discovery.

BACKGROUND

I. Allegations

Slifer was employed by Merck as a senior secretary and was a participant in the Merck & Co., Inc. Long Term Disability Plan for Union Employees. When Slifer ceased working on July 31, 2007, she sought longer term benefits under the plan. On or about March 14, 2008, MetLife found that Slifer was not disabled as defined by the Plan and denied her benefits. Slifer appealed that decision. As part of the appeal, MetLife requested that plaintiff's medical records be reviewed by two independent physician consultants, Dr. J. Collins being one. On or about September 18, 2008, MetLife informed plaintiff that the adverse determination had been upheld.

On or about January 14, 2009, Slifer requested that MetLife "re-evaluate my medical records previously submitted and review the new documents submitted with my letter." (Admin. Record (dkt. #17-1) 29.) MetLife agreed to conduct a "courtesy review." As part of that review, MetLife referred plaintiff's medical records to another independent physician consultant for review. MetLife also requested that Dr. Collins review the "additional" medical information submitted with Slifer's January 14, 2009, letter. (*Id.* at 11.) On or about March 24, 2009, MetLife informed plaintiff that "the original decision to deny LTD benefits is appropriate and remains in effect." (*Id.* at 10.)

II. Procedural Posture

In her opening brief in support of her motion, plaintiff contended that limited discovery into the motivations of the administrator and the independent physician

consultant, Dr. Collins, is warranted under the two-factor test articulated by the Seventh Circuit in *Semien*.  In opposing the motion, defendants agree that the *Semien* test applies because its application is confined to those cases where the court's review is limited to whether the plan administrator acted arbitrarily and capriciously in denying benefits.

Despite originally requesting discovery under *Semien*, plaintiff then amended her complaint in response, adding an allegation that "[u]pon information and belief, the Plan Administrator, Claims Administrator, and Plan trustees were not given discretion to determine benefit eligibility and the review of Defendants' benefit denial is therefore under the *de novo* standard." (Am. Compl. (dkt. #18) ¶ 118.)  Plaintiff also filed a rely brief in which she now argues that the court should conduct a *de novo* review of MetLife's denial, effectively disregarding the argument she made in her opening brief in support of her motion.

In light of this shift in plaintiff's theory of the case, the court granted defendants leave to file a sur-reply brief.  While a determination of the appropriate standard of review would typically be made at summary judgment, plaintiff's request for discovery places it front and center, and both sides have now had a full opportunity to brief the issue.  Accordingly, the court will take up this issue now before ruling on plaintiff's motion for discovery.

OPINION

## I. Appropriate Standard of Review

Where an ERISA insurance plan grants the administrator discretion to determine eligibility, this court reviews the administrator's decision under the arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010); *Herzberger Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000). A plan administrator may in turn delegate its discretionary authority to a claims administrator. *Bemi v. MEGTEC Sys., Inc.*, 676 F. Supp. 2d 767, 775 (E.D. Wis. 2009). To determine whether the administrator has discretionary authority, courts look to the plain language of the plan, without respect to the motives of the plan administrators and fiduciaries. *Firestone*, 289 U.S. at 115; *Herzberger*, 205 F.3d at 330-31.

In support of their argument that the Plan delegates discretion to determine eligibility, defendants submitted a declaration from Bruce Ellis, an employee of Merck, Sharp & Dohme Corp., a subsidiary of Merck & Co., Inc., oversees Merck's administration of the Plan. (Declaration of Bruce Ellis ("Ellis Decl.") (dkt. #24) ¶ 2.) In his declaration, he avers that "[t]he Plan grants discretion to Merck, the Plan Administrator," and that in turn "Merck has delegated such discretion to MetLife, the Claims Administrator." (*Id.* at ¶ 7.)

In support, Ellis points to language in the Plan documents:

- *First*, the January 1, 1987 Plan Document, as amended January 1, 1994, defines Merck as the Plan Administrator and permits it to delegate its authority under the Plan to a Claims Administrator:

> "Plan Administrator. The Company shall be the Plan Administrator of the Plan. To the extent the Plan Administrator has not delegated responsibility for the Plan, [The Plan Administrator] it shall have sole responsibility for the administration of the Plan.

(Ellis Decl., Ex. 1 (dkt. #24-1) 2.)[1]

- *Second*, that same amendment describes the administrative powers of Merck as the Plan Administrator, including:

> (b) except as delegated to the Claims Administrator, to make factual determinations, interpret and construe the Plan, correct defects, supply omissions and reconcile inconsistencies to the extent necessary to effectuate the Plan, resolve all questions arising in the administration, interpretation and application of the Plan, and such action shall be conclusive upon the Company, the employees, their dependents, and beneficiaries;
> (c) except as delegated, to decide all questions of eligibility and participation;

(*Id.*)

- *Third*, the Summary Plan Descriptions ("SPD") -- which was incorporated into the January 1, 1987 Plan document by reference (*see supra* n.1) -- grants Merck discretionary authority:

---

[1] The January 1, 1989 Plan Document expressly incorporates amendments to the Plan and the Summary Plan Descriptions. (Ellis Decl., Ex. 1 (dkt. #24-1) 25.)

5

> Merck & Co., Inc., as plan administrator, has the exclusive discretionary authority to:
> - Construe and interpret the provisions of the LTD Plan;
> - Make factual determinations;
> - Decide all questions of eligibility for benefits;
> - Determine the amount of such benefits;
> - Resolve issues arising in the administration, interpretation, and/or application of the LTD Plan;
> - Correct any defects;
> - Reconcile any inconsistencies; and
> - Supply any omissions with respect to the LTD Plan.
>
> Its decisions on such matters are final and conclusive. Merck & Co., Inc., as plan administrator, has reserved the right to delegate all or any portion of its discretionary authority described in the preceding sentence to a representative (e.g., claims administrator) and such representative's decisions on such matters are final and conclusive. Any interpretations or determinations made pursuant to such discretionary authority of the plan administrator or its representative will be upheld in judicial review unless it is shown that the interpretation or determination was an abuse of discretion.

(Ellis Decl., Ex. 2 (dkt. #24-2) 15.)

- *Fourth*, Merck delegated its discretionary authority to MetLife as the Claims Administrator in an Administrative Services Agreement between Merck and MetLife ("ASA") which provides in pertinent part:

> **Delegation of Authority:** Customer and MetLife acknowledge that Customer has delegated to MetLife, and MetLife has agreed to assume, responsibility and initial discretionary authority for determining eligibility for disability benefits and for construing Plan terms subject to review by the Named ERISA Claim Review Fiduciary.

(Ellis Decl., Ex. 3 (dkt. #24-3) 12.)

In response, plaintiff contends that the Plan itself -- as opposed to the SPD -- does *not* grant discretionary authority to the administrator. While there are no "magic words" to determine whether an administrator has discretion to interpret and apply the plan, the Seventh Circuit has held that the use of the following "safe harbor" language ensures deferential review: "Benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them." *Herzberger*, 205 F.3d at 331.

The language quoted above and acknowledged by plaintiff certainly meets the *Herzberger* standard.  Putting aside her contention that the SPD is not part of the Plan for the moment, the Plan expressly grants discretionary authority to the Plan Administrator.  As noted above, that the Plan expressly delegates to the Plan Administrator the authority to "interpret and construe the Plan," "resolve all questions arising in the administration, interpretation and application of the Plan," and "decide all questions or eligibility and participation."  (Pl.'s Reply (dkt. #19) 4.)  So, too, does the language in the SPD.  Notwithstanding plaintiff's contention to the contrary, the SPD was made part of the Plan and, consistent with the Plan language provides even further support that the Plan Administrator has discretionary authority to determine eligibility.  *See Raybourne v. Cigna Life Ins. Co. of New York*, 576 F.3d 444, 449 (7th Cir. 2009) (finding that the grant of discretion to the claims fiduciary "described in the SPD furnished to [participating] employees" was sufficient to "modif[y] the terms of the underlying plan").  Indeed, in the ASA, Merck expressly delegated its discretionary authority to MetLife.

Accordingly, the court finds that the Plan at issue grants the administrator discretion to determine eligibility and, therefore, the court must review the administrator's decision under the arbitrary and capricious standard, as well as consider plaintiff's request for discovery in light of that standard of review.

## II. Motion for Discovery

With this preliminary question resolved, the court takes up the merits of plaintiff's discovery motion.  In *Semien v. Life Insurance Company of North America*, 436 F.3d 805, 815

7

(7th Cir. 2006), the Seventh Circuit set forth a test for determining whether limited discovery is appropriate in certain ERISA actions. To be granted discovery, a claimant must make the following showing:

> First, a claimant must identify a specific conflict of interest or instance of misconduct. Second, a claimant must make a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect in the plan administrator's determination.

*Id.*

Slifer cannot clear even the first of these two hurdles. Plaintiff principally contends that MetLife violated ERISA's full and fair review procedures and the SPD by consulting "with Dr. Collins during its appeal review of both the March 14, 2008, and September 16, 2008, adverse benefit determinations." (Pl.'s Opening Br. (dkt. #13) 5.) In support, plaintiff cites to 29 C.F.R. § 2560.503-1(h)(3)(v), which provides in pertinent part:

> The claims procedures of a group health plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless . . . the claims procedures
>
> . . .
>
> Provide that the health care professional engaged for purposes of a consultation under paragraph (h)(3)(iii) of this section shall be an individual who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of the appeal, nor the subordinate of any such individual[.]

8

In response, defendants argue that the Plan only requires one review, making Dr. Collins' second review an "extra-contractual 'courtesy review" not subject to ERISA regulations. (Defs.' Opp'n (dkt. #16) 10.)

The court again agrees with defendants. Slifer's submission of additional medical records and her request that MetLife "re-evaluate" its denial was part of one appeal and did not constitute a second, separate appeal. MetLife was, therefore, not required under ERISA to consult with an independent health care professional, who had not previously been engaged in review of Slifer's medical record. Indeed, MetLife's request of Dr. Collins to review the additional records and determine whether this new information altered his original opinion was entirely reasonable. Because plaintiff failed to meet her burden of "identify[ing] a specific conflict of interest or instance of misconduct," *Semien*, 436 F.3d at 815, the court will deny her motion for limited discovery.

## ORDER

IT IS ORDERED that: plaintiff Beverly A. Slifer's motion to allow discovery (dkt. #12) is DENIED.

Entered this 30th day of April, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge